Camden v. Newell.

Himrod in 1869. The rest of the consideration was $5,000 in cash. This sum must be held to have been paid with the complainants' money. The complainants insist that they are entitled to claim the sum of $1,500 also, as having been paid out of their trust-money by Robins upon the Himrod property (which he was to convey to Ely free of encumbrance) in discharging a mortgage thereon. It appears that Robins told Mr. Van Dyck, the attorney whom he sent to the holder of the mortgage to obtain the discharge, to say to the latter that he had paid the amount of the mortgage, and gave him his affidavit to that effect; but it does not appear with or out of what money the mortgage was paid off. The $5,000 cash paid on account of the consideration of the Ely property will, with the interest thereon and the costs of this suit, be charged upon that property, and the properties conveyed to Mr. Robins by Laura Jones will be decreed to belong to the complainants. .

*Mr. J. Henry Stone,* for appellants.

*Mr. Charles T. Cowenhoven,* for respondents.

PER CURIAM.

This decree unanimously affirmed, for the reasons given by the chancellor in the foregoing opinion.

---

THE CITY OF CAMDEN, appellant,

*v.*

TIMOTHY P. NEWELL, respondent.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Camden* v. *Newell, 13 Stew. Eq. 499.*

*Mr. J. W. Morgan* and *Mr. D. J. Pancoast,* for appellant.

The history of this cause here in this court for adjudication is as follows:

On the 4th day of October, 1884, the complainant filed his bill of complaint in the court of chancery, alleging that he became the owner of premises 401 North Fourth street, in the city of Camden, by a sheriff's deed made in a certain foreclosure suit, in which the city of Camden was made a party, in respect to the taxes of 1881 assessed against the premises, which were discharged by a decree in that suit, and that the city was proceeding to enforce the payment of these taxes by a sale of the premises, notwithstanding their discharge, and praying for an injunction to restrain the city from further steps towards their enforcement.

The city of Camden duly answered the bill, " denying that the taxes for the year 1881 were barred, satisfied or in any way discharged or affected by the proceedings or decree of sale in the said cause." And averring " that in the year 1881 the said sum of $106.80 was duly assessed against the said premises for municipal, county and state taxes, which, at the time of said assessment, became a first lien on the said premises for the period of five years, under and by virtue of the charter of the city of Camden, and the public laws of the state relating to municipal taxation; and that the said taxes have never been paid, satisfied or discharged, and are at the present time a valid and subsisting first lien upon the said premises, enforceable by law."

The case was heard upon bill and answer without any proofs excepting the records of the foreclosure suit referred to in the complainants' bill, which the courts looked into by the consent of both parties. No witnesses were examined or testimony taken in the above cause.

The bill in the foreclosure suit states " that the city of Camden claims to have a further lien on said premises for the years 1880 and 1881, but she [the complainant] charges that the said taxes being assessed subsequently to the execution and recording of your oratrix's said mortgage, they are subject to the lien of your oratrix's said mortgage."

The ticket served on the city with the subpœna was as follows:

"You are made a party defendant and subpœnaed to answer the bill of complaint exhibited in the above cause because it is therein alleged that you hold a certain declaration of sale and certain taxes against the premises mentioned and described in said bill, and by virtue thereof claim to have some lien upon or interest in the said mortgaged premises."

On January 2d, 1882, complainant's solicitor in that suit took the bond and mortgage before Master Hoffman and procured him to make a report of what was due thereon without any regard to the city's claim for taxes.

On the 9th day of January following, seven days after the *ex parte* report had been made, the complainant's solicitor procured the chancellor to sign a final decree, confirming the report and ordering a sale of the premises for the payment of complainant's debt, and completely ignoring the claim and rights of the city in the premises.

By this course the city understood that the complainant concluded to take a decree of sale, subject to the city's claim for the taxes of 1881, and afterwards proceeded to enforce their payment, when it was stopped by the present injunction. Upon this state of facts the city of Camden, the appellant, insists—

I. That as a matter of law the city's claim for the taxes of 1882 was a first lien on the premises, and is not subsequent to the complainant's mortgage, as alleged in her bill.

Section 64, charter of Camden, approved February 14th, 1871 (*P. L. of 1871 p. 242*), " make taxes a lien for five years."

The act entitled " A further supplement to an act entitled ' An act concerning taxes,' approved April 14th, 1846, making the same a first lien on real estate." *P. L. of 1880 p. 149.*

An amendment to the last-recited act, approved March 17th, 1882 (*P. L. of 1882, p. 130*), makes taxes a first lien for three years in cities where there is no time fixed in their charter.

That a state can make taxes a lien prior to all others, has been repeatedly held. In the late case of *Albany Brewing Co.* v. *Meriden, 48 Conn. 247*, the supreme court of Connecticut, in speaking upon the subject of a tax-lien, said : " This lien takes

precedence of all others. Mortagees take their security with knowledge that the sovereignty must and will take by taxation all that is necessary to the preservation of its own life; the life of the state is of higher concern than the protection of a debt due to an individual member of it. Therefore, every piece of real estate must contribute its fair proportion to the public treasury if the authorities move within a specified time and according to statutory methods; and this regardless of mortgagees or purchasers." *Gormley's Appeal, 27 Pa. St. 51; Parker v. Baxter, 2 Mass. 185; Langley v. Chapin, 134 Mass. 82, 87.*

In the case of *Hopper v. Malleson's 1 C. E. Gr. 386*, Chancellor Green said on this subject: " The power of the legislature, by virtue of its sovereignty, to make a tax a charge upon the estate of all parties interested in the land, and to make the tax-title paramount to all other and prior claims and encumbrances, is unquestionable." *Howell v. Essex County Road Board, 5 Stew. Eq. 675; Trustees of Public Schools v. Trenton, 3 Stew. Eq. 679; Paterson v. O'Neil, 5 Stew. Eq. 386; Pennington v. Mendes, 11 Stew. Eq. 336.*

That the tax was a first lien appears upon the face of the bill, and the allegation to the contrary was of no effect. Whether the taxes of 1881, by force of our public laws, were a first lien on the said premises, was a matter of law that could not be settled by an unanswered allegation in the bill.

II. It has not been the practice in this state to settle priorities according to unanswered allegations in a bill of foreclosure, but they are universally settled by the master, according to the proofs and without regard to the allegations in the bill.

By rule 22 of the court of chancery there should have been an order of reference to a master to settle the priorities, if the complainant meant to destroy the city's lien for taxes.

Then the city would have had notice to prove its claim, and a decree would have been made in regard to it. It has heretofore been the practice of many lawyers to advise clients who hold encumbrances not to go to the expense of answering a bill of foreclosure, but wait and go before the master on notice and make proof of its priority then; but if the vice-chancellor's ruling is

Camden v. Newell.

right, hereafter the master will have to be guided entirely by allegations in the bill, where they are unanswered, and everybody will have to answer.

III. But in the foreclosure suit in question neither the master's report nor the decree speaks of the claim of the city, and it therefore stands outside of that case unadjudicated.

Could the city of Camden have appealed from that decree in which it was not mentioned? It would seem very clear that such an appeal from nothing would have led to nothing.

IV. Without taxes our government cannot exist, and it would seem to be the duty of our courts of justice to help public officials in their efforts to enforce the payment of taxes imposed by law, rather than retard them by a strained construction of the law in favor of those who seek to evade them.

It is submitted that the injunction restraining the enforcement of these taxes is unwarrantable and ought to be dissolved.

*Mr. Alfred Hugg,* for the respondent.

PER CURIAM.

This decree affirmed, for the reasons given by Vice-Chancellor Bird.

For affirmance—THE CHIEF-JUSTICE, DEPUE, MAGIE, PARKER, REED, SCUDDER, VAN SYCKEL, COLE, WHITAKER—9.

For reversal—DIXON, KNAPP, BROWN, CLEMENT, PATERSON—5.